UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:   Chuck McCune and Chuthamard McCune,                    Case No. 20-12326-j13

Debtors.

## MEMORANDUM OPINION

Before the Court are three motions: 1) Motion to Dismiss filed by the Estate of Thomas

W. Kuehn[1] (Doc. 56) (the "Motion to Dismiss"), 2) Debtors' Motion to Convert from Chapter 13

to Chapter 11 (Doc. 68) ("Debtors' Motion to Convert"), and 3) the Kuehn Estate's Motion to

Convert to Chapter 7 (Doc. 73) (the "Kuehn Estate's Motion to Convert") (collectively, the

"Motions"). The Court held a final hearing on the Motions on August 27, 2021. The parties and

counsel who appeared at the hearing are noted in the record. For the reasons explained below, the

Court will permit Debtors to elect to dismiss their case under 11 U.S.C. § 1307(b).[2] If Debtors do

not elect to dismiss their case, the Court will convert the case to one under chapter 7.

I.      FACTS[3]

A.      Debtors and Related Entities

Debtors are individuals who reside in Albuquerque, New Mexico. Doc. 1. On their

schedules, Debtors stated that they own 100% interests in McCune Works, Inc. ("MWI"),

McCune Solar Works, LLC ("MSW"), and SceneSafe Corporation ("SceneSafe"). Doc. 30.

---

[1] The Court will refer to the Estate of Thomas W. Kuehn as the "Kuehn Estate." Mr. Kuehn is deceased.

[2] All future references to "Code," "Section," and "§" are to the Bankruptcy Code, Title 11 of the United States Code, unless otherwise indicated.

[3] With the parties' consent, the Court took judicial notice of the docket and documents filed in this bankruptcy case. To the extent the Facts section of this Memorandum Opinion includes conclusions of law, such conclusions are incorporated by reference into the Discussion, and to the extent the Discussion section contains findings of fact, such findings are incorporated by reference into the Facts section.

MWI is not currently conducting business. MWI closed its doors and has not operated actively since 2016. Mr. McCune testified that he voluntarily "suspended" MWI in 2019. MWI currently has no assets (other than "some outstanding accounts receivable"), no employees, no customers, and no vendors. Debtors are not involved in winding up MWI's operations, collecting the accounts receivable, or conducting any other activities related to MWI, except defending against claims in state court litigation as described below. MWI did not generate any taxable income while it was operating, and Debtors do not receive any income from MWI.

MSW is not currently conducting business or engaging in any commercial activity. There is no evidence before the Court that MSW has any assets, employees, customers, or vendors or that Debtors are involved in winding up MSW's operations, collecting any accounts receivable, or conducting any other activities related to MSW. Debtors' schedules do not reflect that they receive any income from MSW.

It is unclear from the evidence whether SceneSafe commenced business operations pre-petition.[4] There is no evidence before the Court that Debtors were involved in any commercial or business activities related to SceneSafe on or after the date Debtors filed their bankruptcy petition.

Mr. McCune testified that he could reinstate his contractor's license and that his current intent is to consider having MWI, MSW, and/or SceneSafe engage in business operations depending on resolution of the bankruptcy case and resolution of litigation with the Kuehn Estate.

Debtors' sole income of approximately $2,000 per month is from social security and a family spendthrift trust.

---

[4] See the fact findings below relating to loans from Thomas Luebben and Robert and Elaine Bickerstaff.

## B. Protecting the Shareholders

Mr. McCune is convinced that Mr. Kuehn's surviving spouse poses a serious risk of bodily harm to himself and the shareholders of MWI and MSW. Mr. McCune testified that his concern about the danger is sufficiently great that it adversely affected the operations of MWI and MSW, eventually leading to their cessation of business, and contributed to the Kuehn Estate obtaining a default judgment against MWI and Debtors personally. It also resulted in substantial litigation in connection with the bankruptcy case, and ultimately resulted in entry of a confidentiality protective order (the "Confidentiality Order"–AP No. 21-1013-j, Doc. 67) governing disclosure of information in discovery.

## C. The State Court Litigation

In 2019, the Kuehn Estate commenced a suit in state court against Debtors and MWI related to Mr. Kuehn's payment of $193,240.00 to purchase stock in MWI and Mr. Kuehn's loan of $80,000 to MWI (the "Kuehn Claim").

During the state court litigation, the state court entered a preliminary injunction in January 2020 prohibiting Debtors from refinancing or transferring their property at 411 Cromwell in Albuquerque (the "Cromwell Property"), which was mortgaged by Debtors to secure a note held by a trust. Ex. 2; Ex. C, E, F, O. The preliminary injunction allowed Debtors to request the state court's permission to refinance the property. Ex. 2; Ex. O; Doc. 36. In January and April 2020, the trust notified Debtors that they were in default on the note. Ex. P, Q. In July 2020, Debtors filed a motion in the state court to rescind or modify the preliminary injunction to permit them to refinance the Cromwell Property; however, before the state court ruled on the motion, Debtors transferred the Cromwell Property to the trust by a deed in lieu of

foreclosure in November 2020. Ex. C, F, O. The Court makes no findings of fact regarding the value of the Cromwell Property.

In September 2020, the state court entered a default judgment against Debtors and MWI, jointly and severally, in the amount of $294,110.29 plus interest (the "Keuhn Estate Judgment"). Claim 2-1. The Keuhn Estate Judgment stated that the loan funds were procured by fraud and that Debtors breached the terms of the agreement related to the loan. *Id.* The state court also levied sanctions against Debtors of $4,503.29 plus interest. *Id.* In its proof of claim, the Kuehn Estate asserts that the total amount of the Keuhn Estate Judgment including interest is $342,223.26 as of the date Debtors filed their bankruptcy petition.

The state court issued a transcript of judgment, which the Kuehn Estate recorded in the real estate records of Bernalillo County, New Mexico, resulting in a judgment lien against Debtors' real property located in that county. Debtors' appeal of the state court judgment is pending in the New Mexico Court of Appeals. Ex. B. No stay has been entered pending appeal.

### D. Debtors' Petition, Claims, and Plan

On December 29, 2020 (the "Petition Date"), Debtors, acting pro se, filed their petition for relief under chapter 13 of the United States Bankruptcy Code. Doc. 1 They did not file schedules A-J, a statement of financial affairs, a chapter 13 plan, a statement of current monthly income, a summary of their assets and liabilities, or a calculation of disposable income with their petition. *See* § 521(a); § 1325(b)(3). Although pro se prior to filing the chapter 13 case, Mr. McCune spoke with an attorney about whether chapter 13 relief was suitable for his case and was told it was the appropriate type of bankruptcy case for Debtors to pursue. Debtors relied on that advice. Debtors' did not act in bad faith in choosing to file under chapter 13.

On January 11, 2021, Debtors' present counsel entered his appearance in the chapter 13 case and filed a motion for extension of time to January 28, 2021 to file Debtors' schedules and other documents, which was granted without objection. Doc. 16, 17, and 19. On January 27, 2021, Debtors filed a second motion for extension of time to February 19, 2021 and filed their schedules and other required documents on February 11, 2021. Doc. 21 Debtors filed amended schedules on March 8, 2021. Doc. 37.

In their schedule A/B, Debtors listed as their property a patent valued at $100,000 with the statement: "U.S. Patents–individually owned but partially pledged 2% net profits as contingencies for attorney's fees and other consideration (also approved in Japan) - value based on recent assessment." Doc. 30. Debtors claimed an exemption in the patent of $24,536.63 under § 522(d)(5). *Id.*

Debtors also scheduled their residence located at 2139 Don Andres Place SW in Albuquerque (the "Don Andres Property"), which they valued at $209,390, and in which they claimed an exemption of $23,621.79 under § 522(d)(1), and a tractor valued at $15,000 in which they claimed an exemption of $3,635 under § 522(d)(6). Doc. 30.

On amended schedule F, Debtors scheduled unsecured claims totaling $321,812.64 arising from credit card debt ($6,187.53), legal services ($200,529.99), and several loans to Debtors ($45,095.12), as well as a claim related to a lease from the City of Albuquerque for Debtors' businesses ($25,000) and a claim by Todd Simms of $45,000. Doc. 37.

Debtors stated on amended schedule D that Thomas Luebben holds a contingent, unliquidated claim for $134,000 (the "Luebben Claim"). Doc. 37. They scheduled $34,000 as unsecured based on the value of the Don Andres Property, which secures the Luebben Claim. *Id.* The Luebben Claim is described below.

On amended schedule D, Debtors valued the Dona Andres Property as $209,390 and scheduled a claim by Kanokon Tungdeeteesud in the amount of $185,768.21 secured by a lien against the Dona Andres Property. Doc. 37. On amended schedule D, Debtors also scheduled the Kuehn Estate claim (the "Kuehn Claim") in the amount of $294,110.29, secured by a junior judgment lien against the Dona Andres Property, stated that the unsecured portion of the Kuehn Claim is $273,302.26, and designated the Kuehn Claim as contingent and disputed. *Id.* In its objection to confirmation of Debtors' proposed chapter 13 plan, the Kuehn Estate contested the validity of the Kanokon Tungdeeteesud lien against the Dona Andres Property and the scheduled value of the property to maximize the portion of the Kuehn Claim secured by the judgment lien against the Dona Andres Property. Doc. 41, ¶¶ 22-23. The validity of the Kanokon Tungdeeteesud lien and the value of the Don Andres Property impact the amounts of the secured and unsecured portions of the Kuehn Claim.

The total amount of unsecured claims listed in Debtors' amended schedules, including the unsecured portion of secured claims, is over $600,000. However, the total amount of unsecured claims that Debtors scheduled as noncontingent and liquidated, required to be considered for purposes of the debt limit for chapter 13 debtors, is $210,917.64. That is well below the applicable debt limit for chapter 13 debtors of $419,275. § 109(e). But if the scheduled unsecured portion of the Kuehn Claim is added to the claims scheduled as noncontingent and liquidated, the total scheduled unsecured noncontingent liquidated debt would be $484,219,90, which is over the § 109(e) debt limit.

Debtors filed a chapter 13 plan (the "Plan") on March 8, 2021 and have made all payments required under the Plan. Ex. A; Doc. 39. The current plan payment is $500 per month. *Id.* Debtors have not objected to the Kuehn Estate's proof of claim, but in the Plan, Debtors

propose to avoid the Kuehn Estate's judgment lien under § 522(f) to the extent it impairs an exemption in the Don Andres Property. *Id.* The Court held preliminary hearings on confirmation of the Plan on March 23, April 20, and May 14, 2021.

      E.      **Luebben and Bickerstaff Claims**

Thomas Luebben filed a proof of claim in the amount of $132,000 based on a promissory note (the "Luebben Note") evidencing a loan of $100,000 to MWI, MSW, SceneSafe, and Mr. McCune in 2017. Claim 8-1. According to an attachment to a financing statement, the Luebben Note was secured by tangible assets of MWI valued at $180,600. Ex. G, J. Under a forbearance agreement dated October 1, 2019 Mr. Luebben agreed to forbear from exercising remedies against MWI, MSW, SceneSafe, and Mr. McCune in exchange for additional security for Mr. Luebben. Claim 8-1. An attachment to a financing statement related to the forbearance agreement states that the value of the inventory pledged by SceneSafe to Mr. Luebben under the forbearance agreement is $214,900. *Id.* Uniform Commercial Code financing statements for the security for the Luebben Note were filed. Ex. G, J. SceneSafe also executed a security agreement securing Luebben's loan to MWI with "[a]ll patents, patent applications and recordings thereof . . . ." Ex. L. Mr. Luebben filed a financing statement perfecting his interest in SceneSafe's patents. Ex. K.

MSW purchased tangible assets with funds loaned to MSW by Robert and Elaine Bickerstaff in 2016 (the "Bickerstaff Note"). Ex. N. The Bickerstaff Note states that it is secured by MSW's inventory and equipment. *Id.* There is no evidence before the Court establishing whether the Bickerstaffs filed a UCC financing statement or otherwise perfected their lien on MSW's inventory and equipment. They have not filed a proof of claim in this bankruptcy case.

Several months before the Petition Date, Mr. McCune took the tangible assets securing the Bickerstaff and Luebben Notes to Mr. Bickerstaff's property. After the Petition Date, Mr. McCune retrieved the assets with Mr. Luebben's and Mr. Bickerstaff's consent. The assets are currently on Debtors' property. On their schedule A/B, Debtors stated that MSW's tangible assets were "surrendered to secured party lender and now used in Scene[S]afe." Doc. 30.

## II.   PROCEDURAL HISTORY

### A.   The Motions to Dismiss and Convert

Debtors filed a chapter 13 Plan on March 8, 2021 and the Kuehn Estate objected to confirmation of Debtors' chapter 13 Plan on the ground that Debtors are not eligible for chapter 13 relief. Docs. 39, 41. In its objection, the Kuehn Estate also disputed the validity of a prior lien against and the value of the Don Andres Property as shown on Debtors' amended schedules. At a preliminary hearing on confirmation of the plan, the Kuehn Estate argued that the adversary proceeding and the issue of Debtors' eligibility under chapter 13 should be resolved before the Court takes up confirmation of Debtors' plan.

The Court ruled at the preliminary confirmation hearing that an objection to eligibility must be raised by motion. The Kuehn Estate then filed the Motion to Dismiss this chapter 13 bankruptcy case, arguing that Debtors are not eligible for chapter 13 bankruptcy relief because Debtors' noncontingent, liquidated, unsecured debts exceed the debt limit under § 109(e). Doc. 56. The Kuehn Estate argued that the Kuehn Claim is noncontingent and liquidated and, once it is added to other noncontingent, liquidated claims, Debtors' total noncontingent, liquidated claims exceed the debt limit in § 109(e). *Id.* The Court did not set a final hearing on confirmation of Debtors' chapter 13 Plan pending resolution of the Kuehn Estate's Motion to Dismiss.

In response to the Motion to Dismiss, Debtors maintained that their noncontingent, liquidated debts do not exceed the debt limit in § 109(e) and argued, among other things, that the Kuehn Claim is 1) contingent because the state court judgment is a default judgment that is on appeal in the New Mexico Court of Appeals, and 2) unliquidated because the Keuhn Estate contested the validity of the prior lien against and the value of the Don Andres Property, which renders the amount of the unsecured portion of the Kuehn Claim unliquidated. Doc. 61.

The Court set a final hearing on the Motion to Dismiss for July 19, 2021. Doc. 66. The day before witness and exhibit lists were due, Debtors filed Debtors' Motion to Convert under § 1307(d) seeking to convert their case to a case under subchapter V of chapter 11. Doc. 68. The Court vacated the hearing on the Motion to Dismiss. Doc. 71.

In Debtors' Motion to Convert, Debtors stated that, "for purposes of this motion, [Debtors] concede that they are not currently eligible for [c]hapter 13 relief under § 109(e) . . . ." Doc. 68. Debtors argued that they are eligible to be debtors under subchapter V of chapter 11 and that it is in their best interest to reorganize under subchapter V's provisions.

Seven days later, the Kuehn Estate filed the Kuehn Estate's Motion to Convert seeking to convert Debtors' case to a case under chapter 7 under § 1307(c). Doc. 73. In its motion, the Kuehn Estate argues that Debtors' original petition was "interposed for delay," that Debtors conceded they are not eligible for relief under chapter 13 only on the eve of the final hearing on that issue even though they have been ineligible for such relief since the Petition Date, and that "[f]iling a [c]hapter 13 petition with the knowledge that the Debtors did not qualify for [c]hapter 13 relief is clearly an abuse of the purpose and spirit of the [c]hapter." *Id.* The Kuehn Estate asserts that it is unduly prejudiced by Debtors' commencement of a bankruptcy case under chapter 13, a chapter under which they were not eligible to file, for two reasons: first, because it

has substantially delayed resolution of the bankruptcy case; and second, because it caused unnecessary dissipation of the Kuehn Estate as a result of the substantial legal fees it has expended while the chapter 13 case has been pending.

At the final hearing on the Kuehn Estate's Motion to Convert, the Motion to Dismiss, and the Kuehn Estate's Motion to Convert, counsel for the Debtors acknowledged that Debtors conceded (but did not admit) that they are not eligible to be chapter 3 debtors. Debtors thereby conceded that their chapter 13 bankruptcy case cannot remain in chapter 13. Debtors argued that the case should be converted to chapter 11 rather than chapter 7. Debtors also stated that, if they are not eligible to be debtors under subchapter V, they wish to convert their case to a case under chapter 11 not governed by subchapter V. The Kuehn Estate argued the chapter 13 case should be converted to a chapter 7 case, and that if not converted to chapter 7, the chapter 13 case should be dismissed.

### B. The Adversary Proceeding

After Debtors sought bankruptcy relief, the Kuehn Estate filed a complaint alleging that the Kuehn Claim is nondischargeable under §§ 523(a)(2), (4), (6)[5], and (19), initiating adversary proceeding 21-1013-j. In the complaint, the Kuehn Estate alleges that Debtors fraudulently induced Mr. Kuehn to purchase stock in MWI and to loan money to MWI by representing that the funds would be used to capitalize the corporation when in fact Debtors intended to and did use the money for their personal purposes. AP No. 21-1013-j, Doc. 1. The complaint also alleges that Debtors breached their fiduciary duty as officers of MWI to repay the funds and to use the funds for corporate purposes. *Id.*

---

[5] Although the Kuehn Estate did not assert that the Kuehn Claim is nondischargeable under § 523(a)(6) in the complaint, the Kuehn Estate indicated its intent to rely on § 523(a)(6) as a ground for nondischargeability of the state court judgment in a declaration filed pursuant to this Court's ruling permitting him to do so. AP No. 21-1013-j, Doc. 38.

Discovery disputes have been vigorously litigated primarily due to Debtors' reluctance to disclose the names and identities of the MWI and MSW shareholders based on Mr. McCune's belief that the shareholders will be exposed to bodily harm if such information is disclosed. The Kuehn Estate moved to compel Debtors to respond to discovery and, after several hearings, the Court ordered Debtors to respond to discovery under a Confidentiality Order that restricted disclosure and use of the shareholders' identifying information. AP No. 21-1013, Doc. 67. In addition, the Kuehn Estate moved to quash Debtors' subpoena to The International School at Mesa del Sol seeking information about interactions between school employees and Mr. and Mrs. Kuehn and an alleged death threat against the McCunes' daughter. After a final hearing on the motion to quash, the parties advised the Court that the dispute had been resolved and no order was necessary.

## III.    DISCUSSION

The Kuehn Estate asks the Court to convert this case to a case under chapter 7, or in the alternative, if the Court does not grant such relief, to dismiss the bankruptcy case. Section 1307(c), on which the Kuehn Estate relies, provides that "the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, . . . for cause . . . ."

Debtors ask the Court to convert this case to a case under subchapter V of Chapter 11, or if the Court finds Debtors are not eligible to be debtors under subchapter V, to convert this case to a chapter 11 case not governed by subchapter V. Section 1307(d) provides that "at any time before the confirmation of a plan . . . on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 11 or 12 of this title."

## A.    Summary of the Court's Conclusions

The Court concludes that Debtors' chapter 13 case must be dismissed or converted to another chapter because Debtors conceded for purposes of the pending Motions that they are not eligible to be chapter 13 debtors. The Court concludes that this chapter 13 case should not be converted to chapter 11 because Debtors 1) are not eligible for subchapter V relief, and 2) have not shown that they can effectuate a plan under chapter 11 not governed by subchapter V. The only remaining options are dismissal or conversion to chapter 7. The Kuehn Estate urges conversion to chapter 7. Although Debtors have not invoked their § 1307(b) right to dismiss their chapter 13 case, under the circumstances of this case Debtors' § 1307(b) absolute right to dismiss their chapter 13 case outweighs creditors' interests in having this case converted to chapter 7. Therefore, the Court will give Debtors the option to dismiss their case under § 1307(b). If Debtors do not elect that option, the Court will convert the case to one under chapter 7 because that is the only avenue remaining for this case. This ruling renders moot the Motion to Dismiss.

## B.    Debtors' Case Must Be Converted or Dismissed.

At the final hearing, Debtors stated that they were conceding for purposes of the pending Motions that they are not eligible to be chapter 13 debtors. As a result, no evidence or argument was presented by either party regarding Debtors' eligibility to be debtors under chapter 13. Since this case will not remain pending under chapter 13, conversion to chapter 11, conversion to chapter 7, or dismissal are the only other options.

## C.    Debtors are not eligible for subchapter V relief and have not shown a sufficient reason to convert to regular chapter 11.

Debtors seek to convert their case to a case under subchapter V of chapter 11, or, if they are not eligible for subchapter V relief, to a case under chapter 11 not governed by subchapter V. A debtor does not have an absolute right to convert a chapter 13 case to one under chapter 11. *In*

*re Elwell*, No. 17-51442, 2020 WL 762214, at *2 (Bankr. D. Conn. Feb. 14, 2020). Rather, conversion of a chapter 13 case to a case under chapter 11 is within the Court's sound discretion. *Id*.

Regarding Debtors' request to convert to subchapter V, the threshold question is whether Debtors are eligible for subchapter V relief. In addition, "[w]hen a debtor seeks to convert a [c]hapter 13 case to [c]hapter 11, a court should consider factors such as whether the debtor 1) filed the initial bankruptcy petition and sought to convert in good faith, 2) is able to effectuate a [chapter 11] plan, and 3) has caused prejudicial delay to creditors." *Id.*; *In re Tornheim*, 181 B.R. 161, 169 (Bankr. S.D.N.Y. 1995). A court may also consider whether conversion to chapter 11 would serve a legitimate purpose absent an intent to confirm a chapter 11 plan. In addition, the Court may consider "willful failure of the debtor to abide by orders of the court, . . . failure to timely file a plan, bad faith, and, in the case of debtors whose debts are primarily consumer debts, whether the granting of relief would be a substantial abuse." *In re Keffer*, 628 B.R. 897, 901 (Bankr. S.D.W. Va. 2021) (quoting *In re Lester*, 409 B.R. 364, 371 (Bankr. W.D. Va. 2009)).[6] Debtors bear the burden to show that their chapter 13 case should be converted to a case under subchapter V or to a chapter 11 case. *In re Calascibetta*, No. 19-20558-PRW, 2020 WL 260992, at *2 (Bankr. W.D.N.Y. Jan. 16, 2020) (seeking to convert from chapter 13 to chapter 11).

As discussed in more detail below, the Court finds and concludes that Debtors did not act in bad faith in filing their petition under chapter 13 or in pursuing their bankruptcy case and that the Kuehn Estate is not unduly prejudiced by Debtors' conduct. Hence, the remaining issues

---

[6] *See, e.g.*, *Elwell*, 2020 WL 762214, at *2; *In re Ruffin*, No. 09-04835-JW, 2009 WL 7231291, at *2 (Bankr. D.S.C. Nov. 12, 2009); *Lester*, 409 B.R. 364, 371; *Anderson v. U.S. on Behalf of Small Bus. Admin.*, 165 B.R. 445, 448-49 (S.D. Ind. 1994).

relating to Debtors' Motion to Convert are whether Debtors are eligible for subchapter V or other chapter 11 relief and whether Debtors can effectuate a plan under those provisions.

1. <u>Debtors are not eligible for subchapter V relief.</u>

To be eligible for subchapter V relief, a debtor must be

> [a] person engaged in commercial or business activities (including any affiliate of such person that is also a debtor under this title and excluding a person whose primary activity is the business of owning single asset real estate) that has aggregate noncontingent liquidated secured and unsecured debts as of the date of the filing of the petition or the date of the order for relief in an amount not more than $7,500,000 (excluding debts owed to 1 or more affiliates or insiders) not less than 50 percent of which arose from the commercial or business activities of the debtor.

§ 1182(1)(A).[7]

Because a debtor must currently be "engaged in commercial or business activities," the Court must determine whether the Debtor has satisfied that standard.

Since Debtors are not engaging in commercial or businesses activities on their own account, the Court will first consider whether it sufficient if Mr. McCune is engaging in commercial activities on behalf of one or more of MSI, MSW and SafeScene. Section 1182(1)(A) does not expressly disqualify a debtor from being a debtor under subchapter V if the debtor is engaged in commercial or business activities on behalf of a third party. The court in *In re Johnson,* No. 19-42063-ELM, 2021 WL 825156, at *8 (Bankr. N.D. Tex. Mar. 1, 2021) held that individual debtors are "engaged in commercial or business activities" if engaged in those activities for profit and suggested that might include an indirect profit where individual debtors manage a company in which they hold an ownership interest. However, the *Johnson* court ultimately held that the president of a corporation who had no ownership interest in the

---

[7] Section 1182(B) excludes certain debtors from being eligible for subchapter V relief who satisfy the requirements of § 1182(A). Section 1182(B) is not applicable in the case before the Court.

Case 20-12326-j7   Doc 96   Filed 10/13/21   Entered 10/13/21 16:57:23 Page 14 of 26

corporation was not "engaged in commercial or business activities" as required by § 1182(1)(A). *Johnson*, 2021 WL 825156, at * 8. In *In re Ikalowych*, 629 B.R. 261, 283-84 (Bankr. D. Colo. 2021), the bankruptcy court stretched § 1182(a)(1)'s requirement for the debtor to be engaged in commercial activities to include activities an individual debtor performed on behalf of a limited liability company that the individual debtor owned and managed, recognizing that such a conclusion "suggests that virtually all private sector wage earners may be considered as 'engaged in commercial or business activities.'" 629 B.R. at 286-87 (quoting § 1182(a)(1)). The *Ikalowych* court reasoned that the limiting factor for subchapter V eligibility is the requirement that the qualifying *debt* must arise from "the commercial or business activities *of the debtor*." 629 B.R. at 287 (quoting § 1182(1)(A) (emphasis added)).

The Court will assume without deciding that it would be sufficient if Mr. McCune performed commercial or business activities on behalf of one of his business entities to satisfy § 1182(1)(A)'s requirement that he be engaged in commercial or business activities. It is not necessary for the Court to decide this issue because, as discussed below, Debtors have not shown that MSI, MWI or SceneSafe were engaged in business or commercial activities on the petition date.

While some cases hold that § 1182 does not require a debtor to be engaged in commercial or business activities on the petition date,[8] "[t]he majority of recent cases to examine the issue require subchapter V debtors to be presently engaged in business or commercial activities." *In re Blue*, 630 B.R. 179, 189 (Bankr. M.D.N.C. 2021).[9] The Court adopts the reasoning of these

---

[8] *See, e.g., In re Wright*, No. 20-01035-HB, 2020 WL 2193240 (Bankr. D.S.C. April 27, 2020); *In re Bonert*, 619 B.R. 248 (Bankr. C.D. Cal. 2020) (following *Wright*); *In re Blanchard*, No. 19-12440, 2020 WL 4032411 (Bankr. E.D. La. July 16, 2020) (same).

[9] *See, e.g., In re Vertical Mac Constr., LLC*, No. 6:21-BK-01520-LVV, 2021 WL 3668037, at *2 (Bankr. M.D. Fla. July 23, 2021); *In re Port Arthur Steam Energy, L.P.*, 629 B.R. 233, 236 (Bankr. S.D.

courts and concludes that subchapter V debtors must be engaged in commercial or business activities on the petition date.

The Court next turns to the meaning of the phrase "commercial or business activities," which is not defined in the Code. Because it is not defined, courts addressing this issue first look to the "ordinary, common meaning" of "commercial," "business" and "activities." *In re Offer Space,* 629 B.R. at 305. *See also In re Vertical Mac Constr.,* 2021 WL 3668037, at *3; *In re Thurmon*, 625 B.R. at 421 (examining the common understanding of "engaged in" and analyzing construction of the same phrase in other parts of the Bankruptcy Code.). Using the long-standing common meanings of the terms, and other statutory construction methods, courts have held that the scope of "commercial or business activities" is very broad and encompasses not only businesses that are actively operating, but also other activities of a commercial or business nature, such as maintaining bank accounts and preparing assets for sale;[10] collecting accounts receivable, managing stock and winding down a business;[11] managing a limited liability company and receiving income from that company;[12] and maintaining facilities, filing tax returns, selling assets, and overseeing contractors.[13] Some courts have also considered whether the debtors are pursuing a legal claim against a third party on the petition date.[14]

---

Tex. 2021); *In re Offer Space, LLC*, 629 B.R. 299, 306 (Bankr. D. Utah 2021); *Ikalowych*, 629 B.R. at 283; *Johnson*, 2021 WL 825156, at *6; *In re Thurmon*, 625 B.R. 417, 421 (Bankr. W.D. Mo. 2020).

[10] *Vertical Mac Constr.* 2021 WL 3668037, at *4.

[11] *Offer Space,* 629 B.R. at 306.

[12] *Ikalowych*, 629 B.R. at 276.

[13] *Port Arthur Steam*, 629 B.R. at 237.

[14] *Offer Space,* 629 B.R. at 306 ("As of the Petition Date, the Debtor was actively engaged in commercial or business activities by (1) having active bank accounts; (2) having accounts receivable; (3) analyzing and exploring counterclaims in a lawsuit involving Nutra Now; (4) managing the Stock; and (5) winding down its business and taking reasonable steps to pay its creditors and realize value for its assets."); *Port Arthur Steam*, 629 B.R. at 237 (litigation of a multi-million lawsuit as one of six activities the court relied upon in finding that the debtor was "engaged in commercial or business activities.").

On the other hand, the bankruptcy court in *Thurmon* held that "keeping the empty shell of the former business entity open with the . . . Secretary of State's office does not render [a person] 'engaged' in business activities . . . ." *Thurmon*, 625 B.R. at 423. The court concluded that the debtors were not "engaged in commercial or business activity" on the petition date where the debtors' limited liability company was closed before the petition date and, on the petition date, the company "had no employees, no customers, no vendors, and no intent to resume business activities" although it did own "some outstanding accounts receivable and two cars." *Thurmon*, 625 B.R. at 420.

Where it is not clear whether a debtor's activities are sufficient to constitute a debtor "engaged in commercial or business activities," as required by § 1182(1)(A) to be eligible for subchapter V relief, the Court will examine all of the debtor's activities as a whole to determine whether debtor has met the standard.[15] Even considering the wide range of activities that might constitute "commercial or business activities," Debtors were not engaged in qualifying activities on the Petition Date. MWI closed its doors and has not operated actively since 2016, and Mr. McCune voluntarily "suspended" the corporation in 2019. MWI currently has no assets (other than "some outstanding accounts receivable"), no revenue, no employees, no customers, and no vendors. Debtors are not involved in operating MWI, winding up or starting up its operations, collecting its accounts receivable, liquidating its assets, or conducting any other activities related to MWI, except defending claims in state court litigation by filing an appeal of an adverse judgment against MWI and Debtors. Mr. McCune testified that if MWI and he prevail on appeal, he would consider reactivating MWI's business operations. In these circumstances, Mr. McCune's appeal of the adverse judgment on behalf of MWI and himself is not by itself enough

_____

[15] *See Ikalowych*, 629 B.R. at 283 (employing a totality of the circumstances approach); *Offer Space,* 629 B.R. at 306.

for Mr. McCune to be a debtor "engaged in commercial or business activities" as required by
§ 1182(1)(A).

Similarly, MSW and SceneSafe have no revenue, no employees, no customers, and no vendors. Debtors are not involved in operating MSW or SceneSafe, winding up or starting up their operations, liquidating any assets of either entity, if any, or conducting any other activities related to MSW or SceneSafe. Debtors have not shown that are debtors "engaged in commercial or business activities" as required by § 1182(1)(A) based on any activities Debtors have undertaken on behalf of MSW or SceneSafe.

Because Debtors are not "engaged in commercial or business activities" as required by § 1182(1)(A) to make them eligible for subchapter V relief, even if more than 50% of Debtors' debts arose from commercial or business activities related to MWI, MSW, or SceneSafe, those debts do not make Debtors eligible to be subchapter V debtors. The Court therefore will deny Debtors' Motion to Convert to subchapter V of chapter 11.

2. Debtors have not shown they are able to effectuate a plan in chapter 11 case not governed by subchapter V or that conversion to chapter 11 would serve another legitimate purpose.

Although not eligible under subchapter V, Debtors are eligible for non-subchapter V chapter 11 relief. *Toibb v. Radloff*, 501 U.S. 157, 166 (1991) (holding that individuals not engaged in business may be chapter 11 debtors). To convert their case to a case under chapter 11 outside of subchapter V, Debtors must show that there is a reasonable possibility that they will be able to confirm a chapter 11 plan within a reasonable time or that conversion to chapter 11 would serve some other legitimate chapter 11 purpose. *See Keffer*, 628 B.R. at 902 ("[A] debtor should not be able to convert his case when conversion would result in immediate dismissal or reconversion [on a motion to dismiss pursuant to § 1112(b)(1) for inability to effectuate a plan]."

-18-

(quoting *In re Wetter*, 620 B.R. 243, 249-50 (Bankr. W.D. Va. 2020))); *In re Funk*, 146 B.R. 118, 124 (D.N.J. 1992) (stating that conversion was not appropriate where the debtors did not show "'they ha[d] the ability to propose a plan within a reasonable period of time' or that there is 'some reasonable prospect of reorganization in a [c]hapter 11.'" (quoting the bankruptcy judge's oral findings)).

Debtors have not shown any ability to effectuate a chapter 11 plan or that they should be permitted to use the powers of chapter 11 for some other legitimate chapter 11 purpose not requiring confirmation of a plan.[16] In this case, the unsecured creditors hold claims totaling over $300,000, exclusive of the unsecured portions of the Kuehn Estate and Luebben Claims. The Kuehn Estate filed a claim in the amount of $342,223.26, reduced to a final judgment that is on appeal in state court. To confirm a non-subchapter V chapter 11 plan, Debtors would have to propose a plan that is accepted by the class or classes of claims that includes the Kuehan Estate Claim, or that satisfies the requirements of § 1129(b).

Regardless of the secured and unsecured amounts of the Kuehn Estate Claim, Debtors have presented no evidence nor made any argument regarding how they could confirm a chapter 11 plan under §§ 1129(a) and (b). Debtors have provided the Court with no information regarding what their chapter 11 plan would look like, other argument by counsel Debtors' chapter 11 plan would resemble their chapter 13 Plan. Debtors' chapter 13 Plan proposes to pay $500 per month from Debtors $2,000 monthly income. Is not apparent to the Court how such a plan could be confirmed under § 1129 if the Kuehn Estate voted to reject, and objected to, the

---

[16] For example, a debtor might file chapter 11 case to liquidate wasting assets for the benefit of creditors under a § 363 sale, where the debtor is in a better position to realize value from the assets than a chapter 7 trustee, and then convert the case to chapter 7.

Case 20-12326-j7    Doc 96    Filed 10/13/21    Entered 10/13/21 16:57:23 Page 19 of 26

plan. Nor have Debtors argued that there would be a legitimate chapter 11 purpose if their case converted to chapter 11 absent confirmation of a plan.

Because Debtors have not shown that there is a reasonable possibility they will be able to effectuate a chapter 11 plan and have not argued that there would be a legitimate chapter 11 purpose absent plan confirmation, the Court will deny Debtors' Motion to Convert to a chapter 11 case.

### D. Debtors must either dismiss or convert their case to chapter 7.

Since the Court has decided that the Debtors may not convert their case to a case under subchapter V or non-subchapter V chapter 11, the only other possible outcomes for this case are conversion to chapter 7 or dismissal. As set forth below, the Court concludes that Debtors did not commence or prosecute their chapter 13 case in bad faith and the Kuehn Estate has not been unfairly prejudiced by the delay caused while this case has been pending under chapter 13. For that reason, and because the Debtors have an absolute right under § 1307(b) to voluntarily dismiss their chapter 13 case,[17] the Court will permit Debtors to choose between conversion of their case to chapter 7 and dismissal of the case.

1. <u>Standard Governing Conversion to Chapter 7 or Dismissal under § 1307(c)</u>

Section 1307(c) provides that the court may convert a chapter 13 case to chapter 7 or may dismiss the case, whichever is in the best interests of creditors and the estate, for "cause." "Cause" under § 1307(c) includes "unreasonable delay by the debtor that is prejudicial to

---

[17] *In re Mills*, 539 B.R. 879, 884 (Bankr. D. Kan. 2015) (noting that there is no binding Tenth Circuit precedent on this issue and holding that the debtor's unconditioned right to voluntarily dismiss a chapter 13 case under § 1307(b) is absolute and must be honored by the court, even in the face of a competing motion to convert); *see also In re Barbieri*, 199 F.3d 616 (2nd Cir. 1999) (chapter 13 debtor has an absolute right to dismiss case under § 1307(b) provided an order converting the case to chapter 7 has not been entered). *Contra In re Jacobsen*, 609 F.3d 647 (5th Cir. 2010) (chapter 13 debtor's right to dismiss under § 1307(b) is not absolute and may be denied based on debtor's bad faith conduct).

creditors" and lack of good faith in filing a petition. § 1307(c)(1);[18] *In re Davis*, 239 B.R. 573, 578 (10th Cir. BAP 1999) ("It is well established that lack of good faith in commencing a case is 'cause' for dismissal of a [c]hapter 13 case" under § 1307(c)). Whether to grant relief under § 1307(c) falls within the Court's sound discretion. § 1307(c) (providing that "the court *may* convert a case . . . or *may* dismiss a case . . . ."); *In re Lundahl*, 307 B.R. 233, 250 (Bankr. D. Utah 2003) ("Section 1307(c) gives discretion to the Court in deciding whether to dismiss or convert, whichever is in the best interest of creditors and the estate.").

2.  Debtors' Good Faith Commencement of this Chapter 13 Case

To determine whether a chapter 13 petition was filed in good faith, the Court considers whether, under the totality of the circumstances, "there has been an abuse of the provisions, purpose, or spirit of [the Chapter]." *In re Gier*, 986 F.2d 1326, 1329 (10th Cir. 1993) (quoting *Matter of Love*, 957 F.2d 1350, 1357 (7th Cir. 1992)). Analysis of a debtor's good faith may focus on "the nature of the debt, . . .; the timing of the petition; . . . how the debt arose; [and] . . . the debtor's motive in filing the petition . . . ." *In re Sinischo*, 561 B.R. 176, 191 (Bankr. D. Colo. 2016) (quoting *Gier,* 986 F.2d at 1329). Other factors include "how the debtor's actions affected creditors;. .. the debtor's treatment of creditors both before and after the petition was filed; and. .. whether the debtor has been forthcoming with the bankruptcy court and the creditors." *Id.* Because the Court assesses the totality of the circumstances, "these factors are not necessarily weighted, nor are they exhaustive . . . ." *In re Montoya*, 333 B.R. 449, 458 (Bankr. D. Utah 2005). *See also In re Plagakis*, No. 03 CV 0728(SJ), 2004 WL 203090, at \*5-6 (E.D.N.Y.

---

[18] The grounds enumerated grounds for cause under § 1307(c) are non-exusive. Section 1307(c) provides that the case may be converted to chapter 7 or dismissed for cause, "including", and then enumerates grounds that constitute cause. Section 102(3) provides that in Title 11 "'includes' and 'including' are not limiting."

Jan. 27, 2004) (using the same standard to analyze a debtor's good faith under both § 1307(c) and (d)).

Debtors did not commence their chapter 13 case in bad faith. Although unrepresented by counsel prior to filing their chapter 13 case, Mr. McCune spoke with an attorney about whether chapter 13 relief was suitable for his case and was told it was the appropriate type of bankruptcy case for Debtors to pursue. Debtors relied on that advice. Debtors did not act in bad faith in choosing to file under chapter 13.[19]

   3.   Debtors' Good Faith in Prosecuting this Chapter 13 Case

The Court also concludes the Debtors did not act in bad faith by litigating their eligibility for chapter 13 relief until the eve of the hearing the Kuehn Estate's Motion to Dismiss. Debtors had a good faith argument that they were eligible to be chapter 13 debtors because the unsecured portion of the Kuehn Estate Claim arguably was unliquidated and therefore should not be included in chapter 13 eligibility calculations.

Debtors alleged in their response to the Motion to Dismiss that the unsecured portion of the Kuehn Estate Claim was unliquidated for two reasons: first, because the Kuehn Estate asserted Debtors undervalued the Don Andres Property; and second, because the Kuehn Estate disputed the validity of the lien against the Don Andres Property that is prior to the Kuehn Estate lien. To determine whether a claim is liquidated for purposes of examining eligibility, the Court

---

[19] The Court also notes that the majority of courts have held that eligibility under § 109(e) is not jurisdictional. *In re Friedrich*, 618 B.R. 274, 276–77 (Bankr. W.D. Wis. 2020). The issue of eligibility therefore may be waived by failure to object timely. *In re Petty*, No. 18-40258, 2018 WL 1956187, at *1 (Bankr. E.D. Tex. Apr. 24, 2018). Given Debtors' circumstances and the eligibility arguments he asserted, the Court also takes this into account.

should not rely exclusively on the debtor's characterization of the nature or amount of the debt. *In re Adams*, 373 B.R. 116, 121 (10th Cir. BAP 2007).

A debt is liquidated if the amount is "readily determinable." *Adams*, 373 B.R. at 119. According to the Tenth Circuit Bankruptcy Appellate Panel: "The key factor for determining whether a debt is liquidated or unliquidated is whether the debt is subject to a simple mathematical computation or ascertainable by reference to an agreement." *Id.* at 120. There is authority for the proposition that "'[t]he definition of 'ready determination' turns on the distinction between a simple hearing to determine the amount of a certain debt, and an extensive and contested evidentiary hearing in which substantial evidence may be necessary to establish amounts or liability.'" *In re Slack*, 187 F.3d 1070, 1073-74 (9th Cir. 1999) (quoting *In re Wenberg*, 94 B.R. 631, 633 (9th Cir. BAP 1988), *aff'd,* 902 F.2d 768 (9th Cir. 1990)).

Based on the existing caselaw of the Ninth Circuit and the Tenth Circuit Bankruptcy Appellate Panel, Debtors had a good faith argument that the unsecured portion of the Kuehn Estate claim was unliquidated because determining the validity of the prior lien against, and the value of, the Don Andres Property, required a contested evidentiary hearing with substantial evidence rather than a simple hearing to determine the secured and unsecured amounts of the Kuehn Estate claim. The Court will therefore deny the Kuehn Estate's Motion to Convert to the extent it rests on Debtors' bad faith in prosecuting the chapter 13 case.

### 4. No Delay Unduly Prejudicial to the Kuehn Estate

In addition, Debtors' conduct during the chapter 13 case has not been deleterious or unduly prejudicial to the Kuehn Estate. At the preliminary confirmation hearing on Debtors' chapter 13 Plan, the Kuehn Estate advised the Court, over Debtors' contrary position, that the adversary proceeding it filed should be resolved before the final confirmation hearing. Further,

the Kuehn Estate did not file its Motion to Dismiss for well over four months after

commencement of the chapter 13 case. Debtors filed their Motion to Convert to Chapter 11 less

than two months later.

Any delay while this case has been pending under chapter 13 is not entirely attributable

to Debtors' choice of chapter 13 relief, Debtors' strategy in litigating the eligibility issue, or

Debtors' Motion to Convert, and is not unduly prejudicial to the Kuehn Estate. The Court will

therefore deny the Kuehn Estate's Motion to Convert to the extent it rests on delay that is unduly

prejudicial to creditors.

     5.  <u>Debtors' Pre-Petition Conduct</u>

Finally, a debtor's pre-petition conduct is relevant to the Court's consideration of whether

"cause" exists to convert a debtor's chapter 13 case to chapter 7 under § 1307(c) based on lack of

good faith. *See In re Lanham,* 346 B.R. 211, 214 (Bankr. D. Colo. 2006) ("Lack of good faith is

shown . . . when a debtor's conduct before . . . a case constitutes an abuse of the provisions,

purpose or spirit of the chapter under which relief is sought."). Here, Debtors' pre-petition

transfer of the Cromwell Property and pre-petition transfer of assets securing the Bickerstaff and

Leubben Notes to Mr. Bickerstaff's property are transfers a chapter 7 trustee would investigate

further if this case were converted to chapter 7. However, given the totality of the circumstances,

the Court will give Debtors the opportunity to dismiss their chapter 13 case and will convert this

case to chapter 7 only if Debtors do not avail themselves of that opportunity. Those

circumstances include Debtors' good faith commencement of their chapter 13 case, the lack of

undue delay to the Kuehn Estate in the prosecution of the chapter 13 case, Debtors' good faith

argument for chapter 13 eligibility, Debtors' strategic decision to seek to convert to chapter 11

rather than litigate chapter 13 eligibility even though the strategy did not succeed, and a debtor's absolute right to dismiss a chapter 13 case that has not previously been converted.

### E. Debtors' Option to Exercise Absolute Right to Voluntary Dismiss Chapter 13 Case

Although Debtors have not specifically requested dismissal in the event the Court does not grant their request to convert to chapter 11, § 1307(b) grants Debtors an absolute right to voluntarily dismiss their chapter 13 case since their case has not previously been converted.[20] Section 1307(b) provides:

> On request of the debtor at any time, if the case has not been converted under section 706, 1112, or 1208 of this title, the court shall dismiss a case under this chapter. Any waiver of the right to dismiss under this subsection is unenforceable.

"Given the explicit mandatory language of § 1307(b), the limits the Supreme Court has placed on the scope of § 105(a), and the voluntary nature of chapter 13 relief, . . . [there is] no 'implicit exception' to the debtor's unqualified right of dismissal." *Mills*, 539 B.R. at 879. Debtors' chapter 13 case has not previously been converted. Thus, Debtors should be given the option to elect dismissal under § 1307(b) notwithstanding the Kuehn Estate's Motion to Convert. If this case is dismissed, the provisions of the Confidentiality Order shall remain in full force and effect. If Debtors' do not timely elect dismissal, the Court will convert this case to chapter 7.

## IV. CONCLUSION

Debtors are not eligible for relief under subchapter V and may not convert their case to a non-subchapter V chapter 11 case. Hence, Debtors' case must be dismissed or converted to

---

[20] *Mills*, 539 B.R. at 879; *In re Nichols*, 10 F.4th 956 (9th Cir. 2021) (concluding that *Law v. Siegel*, 571 U.S. 415 (2014) effectively overruled its prior decision in *In re Rosson*, 545 F.3d 764 (9th Cir. 2008), and holding that 1307(b)'s right to voluntary dismissal if the case has not previously been converted is absolute); *Barbieri*, 199 F.3d at 619 (absolute right to dismiss under § 1307(b)). *Contra Jacobsen*, 609 F.3d at 660 (right to dismiss under 1307(c) is not absolute).

chapter 7. The Court will permit Debtors to elect to dismiss their case under § 1307(b). If

Debtors do not dismiss their case, the Court will convert the case to one under chapter 7.

The Court will issue a separate order consistent with this Memorandum Opinion.

ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date Entered on Docket:  October 13, 2021

Copy To:

Ronald E. Holmes
Attorney for Debtors Chuck and Chuthamard McCune
Davis Miles McGuire Gardner, PLLC
320 Gold SW, Suite 1111
Albuquerque, NM 87102

Robert L. Pidcock
Attorney for Creditor the Kuehn Estate of Thomas W. Kuehne
501 Wyoming Blvd. SE
Albuquerque, NM 87123

Tiffany M. Cornejo
Chapter 13 Trustee
625 Silver Avenue SW, Suite 350
Albuquerque, NM 87102-3111